Geeen, J.
delivered the opinion of the court.
An execution for $4480 20, in favor of Stephen D. C. Abbott against John Barber, directed to the sheriff of Rutherford county, from the Davidson circuit court, tested of the 2d Monday of January, 1838, came to the hands of said sheriff, and was, on 15th January, 1838, levied, amongst other property, upon the three negroes in controversy. A delivery bond was taken the same day, with Thomas Barber as security, and was forfeited, and the execution, with a large balance unsatisfied, together with the forfeited delivery bond, was returned to the Davidson circuit court.
On the 30th day of November, 1839, the complainant purchased the said negro slaves from said John Barber, and took his bill of sale of that date for them, which was acknowledged the 6th day of January, 1840, and registered in Rutherford county, the 7th of January 1840. An execution in favor of Abbott against said John Barber, and his security in the delivery bond, Thomas Barber, was issued the 13th January 1840, bearing test the 2d Monday of that month, and directed to the sheriff of Rutherford county, came to his hands, and was by him levied upon .the negroes in controversy, as the property of John Barber. To restrain the sale, this bill is filed, and the question now is, whether the levy of Abbott’s execution in 1838, created a lien upon the negroes in controversy, which continues to the present time, unaffected by the execution and forfeiture of the delivery bond.
The delivery of an execution to the sheriff', binds the defendant’s goods, so that no sale by him, after that time would be *533 good. But the levy of the execution changes the property of the goods, placing them in the custody of the law. The sheriff acquires a special property that will enable him to protect his possession, and for this end, he may maintain trover, or trespass against any person, who may take away, or injure the goods. And this property continues after the return of the execution, so that he may sell, without a vendido exponas.
By our act of 1801, ch. 13, sec. 1, when an execution is levied upon property, if the debtor shall give sufficient security to the officer, for the forthcoming thereof, on the day of sale, it is the duty of such officer to take a bond payable to the creditor in double the amount of the execution, conditioned for the delivery of such property.
The act of 1831, ch. 25, sec. 1, provides that the security in such delivery bond, shall only be responsible for the value of the property specified in the bond that shall not have been delivered. The second section provides, that if any such bond shall be forfeited in whole or in part, it shall be the duty of the sheriff or other officer, holding such execution and bond, to proceed to levy upon so much of the property of the defendant, if to be found, as shall be sufficient to - satisfy the same; and should such officer be unable to find property of the defendant sufficient to satisfy the execution, he shall proceed to levy the same upon the property of the security, to satisfy so much of the execution as the property for the delivery of which he became bound, was valued. And if satisfaction be not made before the time required for the return of the execution, it is the duty of the officer to return the forfeited bond with the execution, and the clerk or justice is required to issue an alias execution for the unsatisfied balance. And by the third section, it is provided, that the delivery bond forfeited shall be in the hands of the officer, a sufficient authority to levy and sell the property of the securities to satisfy so much of the debt as they may be liable for. And shall be sufficient authority for the clerk, ora justice to issue an alias execution against the defendant and his securities without a judgment thereon.
By the provisions of this act, the sheriff instead of taking-possession of the property levied on, if a forthcoming bond be *534 tendered, leaves it in the custody and possession of the defendant. By taking the bond, he has lost all control, over the property. He has no right to resume the possession of it, nor can he maintain any action in reference to it. Still we apprehend the lien of the execution is not destroyed by the mere execution of the bond. The levy changed the property of the goods, and placed them in the custody of the law, and the right of possession was vested in the sheriff. By the execution of the forthcoming bond the sheriff’s right of possession is destroyed, and the defendant in the execution, is entrusted with its custody until the day of sale, when he may deliver it or not as he chooses. It does not follow, however, that because the sheriff’s power of controlling the property is gone by the force of the statute,' that the lien created by the levy is gone also. On the contrary it seems necessary that the lien should be preserved in order to give the sheriff authority to sell, when the property may be delivered on the day of sale. If no lien existed from the time of the execution of the delivery bond until the day of sale, it is not perceived by what authority the sale could be made, seeing no new levy could be made until after a forfeiture of the bond.
This view of the subject too, seems proper, in order that securities may not be involved in difficulty, by finding the property of their principal in the hands of the officer by virtue ^of a junior execution, so that, although they may be bound by law to deliver it to satisfy one execution, they will be prevented from doing so by law, in consequence of the levy of another.
But after the delivery bond is forfeited, the condition of things is very much changed. By the 3d section of the act of 1831, the forfeited bond operates as a judgment in the sheriff’s hands, and if it be returned with the execution, the clerk is authorized to issue an execution against the principal and securities, without a judgment. The execution and levy, and consequently the plaintiff’s lien upon the property, are all merged in this forfeited bond, thus having all the force of a judgment. Tire plaintiff’s remedy is exclusively upon his bond, and the execution *535 Issued upon it, cannot relate beyond the time it was forfeited and become a judgment.
Upon this view of the case, it is clear, that the lien created by the levy of the execution before 'the bond was taken, is merged in the forfeited bond, and entirely gone.
But the 2d section of the act of 1831, declares, that when a delivery bond shall be forfeited in whole, or in part, the officer holding the execution and bond, shall-proceed to levy, upon so much of the property of the defendant, as will satisfy said execution. It does not direct that he shall take into his possession the property he had before levied on, but evidently regarding that levy as of no force, and the rights of the plaintiff, henceforth as springing out of the forfeited bond entirely, the di-. rection is, to levy on the defendant’s goods for the whole amount, and if he have not sufficient to satisfy the demand, then to levy ón the property of the security, to the value of the goods, for the delivery of which he became liable.
If this view of the cause needed support from authority, the case of Lusk vs. Ramsey (5 Munf. Va. Rep. 417) maybe cited as strongly confirmatory. In that case, an execution against Lusk was levied upon a stock of goods in his store, and Ramsey, with another, became his security for their delivery. Soon afterwards', and before the day of sale, Lusk delivered the same goods to the sheriff, in discharge of his body, that had been taken by virtue of a casa, at the instance of another creditor. On the day appointed for the sale, the sheriff attended to receive the goods, but had the key of the store in his own pocket. A friend of Ramsey applied to the sheriff for the key, to enable him to deliver the goods, which was refused, and Ramsey filed his bill against all the parties for relief.
The law of Virginia provides, that if sufficient security be given to the officer levying an execution, to have the same goods- forthcoming at the time of sale, he shall accept the same, and suffer the said goods to remain in the possession and at the risk of such debtor, until the time aforesaid, and if the goods be not delivered, the bond so given and forfeited shall have the force of a judgment.
In this case all the judges agreed,, that after the bond is for *536 feited, the lien of the execution upon the property on which it had been levied, is gone, and judge Cabell was of opinion, that the execution of the bond and restoration of the property to the debtor, was a discharge of the lien; that as the sheriff had lost all control over it, and (in the language of Lord Holt, in Clark vs. Withers, 6 Mod. 292,) “there be none who can make title to the goods under the execution,” they are restored to the first owner. But judges Roane and Flemming, held more properly, we think, that the sheriff’s loss of possession and control, produced by the operation of the statute, ought not to be construed to destroy the lien until the bond should be forfeited; when operating as a judgment, it merges the previous proceedings.
We are, therefore, of opinion, that after the delivery bond executed by the Barbers was forfeited, the lien of Abbott’s execution on these negroes was gone.
The execution that was issued in 1840, tested of the 2d Monday of January, does not- overreach the complainant’s bill of ■ sale, which was registered the 7th of that month, and necessarily before the second Monday. The complainant has, therefore, a good tide to the negroes, and the defendant must he enjoined all further proceedings against them, by virtue of his execution. Affirm the decree.